## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SIERRA RUDMAN and CALYN BOYD, )<br><br>Plaintiffs, )<br><br>-vs- )<br><br>STATE OF OKLAHOMA, *ex rel*. BOARD OF REGENTS FOR THE REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA, and KAY ROBINSON, )<br><br>Defendants. ) | Case No. CIV-22-0091-F |

## <u>ORDER</u>

Plaintiffs Sierra Rudman and Calyn Boyd bring this civil action against defendants State of Oklahoma, *ex rel.* Board of Regents for the Regional University System of Oklahoma and Kay Robinson seeking to recover damages under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681(a), and 42 U.S.C. § 1983.  Plaintiffs allege violations of their statutory rights under Title IX and violations of their constitutional rights under the First and Fourteenth Amendments.  Defendants have moved for dismissal of plaintiffs' First Amended Complaint pursuant to Rules 12(b)(1),[1] 12(b)(5) and 12(b)(6), Fed. R. Civ. P.  Doc.

---

[1] Although defendants rely upon Rule 12(b)(1) as a basis for dismissal, defendants do not proffer any developed argument that the court lacks subject matter jurisdiction over plaintiffs' First Amended Complaint.  The court concludes it has subject matter jurisdiction over plaintiffs' amended pleading and action given plaintiffs' assertion of federal law claims under Title IX and § 1983.  *See*, 28 U.S.C. § 1331.  Title IX claims are the only claims alleged against defendant, State of Oklahoma, *ex rel*. Board of Regents for the University System of Oklahoma, and Title IX abrogated the state's Eleventh Amendment immunity.  *See*, <u>Franklin v. Gwinnett Cty. Pub. Schs.</u>,

nos. 13, 14, 15 and 16.   In addition, defendants have moved for severance of plaintiffs' claims against them pursuant to Rule 21, Fed. R. Civ. P.   Doc. no. 17. Plaintiffs have responded to defendants' motions, opposing dismissal and severance. Doc. nos. 19, 20, 22, 34, and 35.   Defendants have replied to defendants' responses. Doc. nos. 27, 28, 29, 36, and 37.   Upon due consideration of the parties' submissions, the court makes its determination.

## I.

### *Legal Standards*

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.   A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).   In reviewing a motion to dismiss, the court assumes the truth of "all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." Dias v. City & Cty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009).

Defendant Robinson, who is sued in her individual capacity, raises the defense of qualified immunity.   When a defendant asserts a qualified-immunity defense, the burden shifts to plaintiffs to allege facts sufficient to show "(1) that the defendant violated a constitutional or statutory right (2) that was clearly established at the time of the conduct in question." Dahn v. Amedei, 867 F.3d 1178, 1185 (10th Cir. 2017). The court "can decide which prong to address first, and need not address both." *Id.*

---

503 U.S. 60, 72 (1992); 42 U.S.C. § 2000d-7(a)(1).   Consequently, defendant may be sued for violations of Title IX. *Id.* Further, while defendant Kay Robinson asserts qualified immunity, such immunity is a defense on the merits of plaintiffs' claim, not a jurisdictional bar to those claims. *See,* Neal v. Davis, 475 Fed. Appx. 690, 692 (10th Cir. 2012) (unpublished case cited as persuasive pursuant to 10th Cir. R. 32.1(A)).

To survive a motion to dismiss, plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id*. (quotation marks and citation omitted).

A Rule 12(b)(5) motion "challenges the mode or lack of delivery of a summons and complaint." Gallan v. Bloom Business Jets, LLC, 480 F.Supp.3d 1173, 1178 (D. Colo. 2020) (quoting Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1349 (D. Kan. 1994)).   "Effectuation of service is a precondition to suit[.]" Sarnella v. Kuhns, No. 17-cv-02126-WYD-STV, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018) (quoting Jenkins v. City of Topeka, 136 F.3d 1274, 1275 (10th Cir. 1998)).  Without proper service, the court lacks personal jurisdiction over the defendants. *Id*. (citing Oklahoma Radio Associates v. FDIC, 969 F.2d 940, 943 (10th Cir. 1992)).

In opposing a motion to dismiss for insufficient service of process under Rule 12(b)(5), plaintiffs bear the burden of making a prima facie case that they have satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendants.  Fisher v. Lynch, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008) (citing Bernard v. Husky Truck Stop, No. 93-2241-JWL, 1994 WL 171732, at *1 (D. Kan. Apr. 20, 1994), *aff'd*, 45 F.3d 439 (10th Cir. 1995)).  Plaintiffs must demonstrate that the procedure employed by them to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure.  Sarnella, 2018 WL 1444210, at *1.

"[W]hen a [district] court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." Pell v. Azar Nut Co., Inc., 711 F.2d 949, 950 n. 2 (10th Cir. 1983).  Nevertheless, the district court retains "broad discretion to dismiss the action if it appears unlikely that proper service can or will be instituted." *Id*; *see*, Gregory v. U.S./U.S. Bankruptcy Court, 942 F.2d 1498, 1500 (10th Cir, 1991) (affirming dismissal under Rule 12(b)(5), where "proper service of process would be futile");

*see also*, 5B Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 1354 (3d ed. 2004).

Under Rule 20(a) of the Federal Rules of Civil Procedure, persons may join in one action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "(B) any question of law or fact common to all plaintiffs will arise in the action."  If either of the elements are not satisfied, the court, pursuant to Rule 21 of the Federal Rules of Civil Procedure, "may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  The court retains broad discretion with respect to dropping parties or severing claims.  *See*, <u>K-B Trucking Co. v. Riss Intern. Corp.</u>, 763 F.2d 1148, 1153 (10th Cir. 1985); 7 C. Wright, A. Miller, & M. Kane, <u>Federal Practice and Procedure</u>, § 1689 (3d ed. 2001).  The court should only exercise its discretion to drop or dismiss parties "if doing so will not prejudice any substantial right." <u>DirecTV, Inc. v. Leto</u>, 467 F.3d 842, 846 (3d Cir. 2006) (quotation marks, emphasis and citation omitted).  If claims are severed, they "become independent actions with separate judgments entered in each."  <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1519 n. 8 (10th Cir. 1991).

II.

*Factual Allegations from the First Amended Complaint*

The well-pleaded factual allegations in the First Amended Complaint are summarized here, first as to plaintiff Calyn Boyd and then as to plaintiff Sierra Rudman.  As required for purposes of adjudication under Rule 12(b)(6), these allegations are assumed to be true, and they are construed favorably to plaintiffs.

<u>Plaintiff Calyn Boyd (Boyd)</u>

Boyd was employed by the University of Central Oklahoma (UCO) as Coordinator of Student Engagement for the Division of Enrollment and Student Success from on or around July 23, 2018 until September 21, 2020.  She reported to

Sara Watkins, Assistant Director of Student Engagement, and defendant Kay Robinson (Robinson), Senior Director of Student and Community Engagement.

UCO is a public four-year college operated by defendant State of Oklahoma, *ex rel.* Board of Regents for the Regional University System of Oklahoma (Board). The university is a recipient of federal funds and subject to Title IX.  At all times relevant, the university had a Title IX policy, which prohibited all forms of sexual or sex-based harassment or discrimination, or sexual misconduct, including sexual violence, sexual assault, and stalking.  The Title IX policy also prohibited retaliation against any person for making any good faith report of sexual harassment, discrimination or misconduct.

In addition, the university had a general anti-discrimination and anti-harassment policy and a sexual discrimination and harassment investigation policy.  It also had a student code of conduct (student code), which prohibited hazing.

Further, the university had an employee handbook, which mandated that any complaints or known acts of discrimination and harassment be reported by employees.   The handbook also prohibited retaliation against employees for reporting discrimination, harassment, and unethical behavior.

According to the amended complaint, Boyd was a mandatory reporter of sexual harassment, sexual exploitation, sexual discrimination, and hazing.  She received Title IX training and was considered a "Responsible Employee" at UCO for purposes of Title IX.  As a "Responsible Employee," she had the legal duty to report any incidents of sexual harassment, sexual discrimination, or other violations of Title IX.  Doc. no. 11, ¶ 12.

Boyd's job duties included recruiting new students and acting as a liaison between UCO and its fraternities and sororities.

In the fall of 2018, Boyd received reports from UCO students about mishandled hazing incidents which took place before her employment, and she addressed several fraternity hazing reports.

Boyd also reported an incident of hazing, sexual discrimination, and sexual harassment regarding a UCO sorority.  The acts or omissions included adult leaders demanding that student members "tile floors in the sorority house and perform minor construction without compensation;" not providing the student members with meals even though meals plans were purchased; and demanding that the student members produce their private medical records to the adult leaders.  Doc. no. 11, at 3.

At the university, several campus organizations conducted events where upper-class students were appointed to mentor or guide new or under-class students. One of those organizations, the Cheer Team (Cheer Team), held such an event, known as the Big Sister/Little Sister Reveal (Big/Little Reveal).  This annual event was broken down into two smaller events: one "official," supervised and led by UCO employees and representatives, and one "unofficial."

In the summer of 2019, Boyd reported to Robinson that she had learned of sexual exploitation and harassment hazing which occurred at the "unofficial" Big/Little Reveal event in August of 2018.  Robinson said she would "look into it," but she did nothing to investigate or prevent the sexual exploitation or harassment hazing Boyd was reporting.  Doc. no. 11, ¶¶ 18 and 22.

According to Boyd, there was never a time during her employment that she was not receiving complaints from UCO students about the hazing in school programs such as sororities and cheerleading.

After she reported sexual harassment and discrimination at the sorority, Boyd's supervisors began treating her differently.  UCO employees spoke to Boyd in a degrading and condescending manner and disbelieved all her reports and complaints of unlawful activity.  She felt she "had a target on her back."  Doc. no. 11, ¶ 21.  According to Boyd, this conduct continued after she reported the Cheer Team hazing.

Several weeks after she reported the August 2018 Big/Little Reveal abuse, Boyd and approximately 100 students attended an event at the UCO football

stadium.  When Boyd learned a very violent storm was approaching, she reported the dangerous situation to Robinson and other UCO officials.  They disbelieved her and prevented her and the students in her charge from leaving the stadium.  Boyd sneaked the students out through an unblocked exit, and the students were allowed to leave the stadium after UCO officials starting hearing tornado alarms.  Days later, Robinson suspended Boyd without explanation or warning.  On the day of her suspension, Robinson had been praised for her work during the student recruitment season.

During the last weeks of her employment in 2020, Boyd reported to Robinson and other UCO decisionmakers on the continuing and new sorority hazing and harassment by the adult leadership.  Boyd also referred the hazing to one sorority's national office.

UCO fired Boyd on September 21, 2020.  Robinson ordered Boyd to surrender ownership of a GroupMe text messaging application for one sorority she was supporting.

Boyd alleges a claim of retaliation under Title IX against the Board.  In addition, she alleges Fourteenth Amendment due process and equal protection claims and First Amendment free speech claims against Robinson, in her individual capacity.

Plaintiff Sierra Rudman (Rudman)

At all relevant times, Rudman was a student at UCO.  She participated in the Cheer Team from February or March 2020 until the spring of 2021.  Defendant Robinson's job duties included having responsibility for UCO Spirit Teams, including the Cheer Team.  On or around August 13, 2020, Rudman was invited to attend the Big/Little Reveal.  All new Cheer Team members, such as Rudman, were expected to attend the Big/Little Reveal.

The "unofficial" Big/Little Reveal event was held at an off-campus residence of two upper-class Cheer Team members.  At least seven other new Cheer Team

members, including males, attended the "unofficial" event.  Upon arrival, Rudman was told to surrender her car keys and cell phone.  Like other new Cheer Team members, she was blindfolded and taken into the house.  Although minors, she and other new members were provided alcohol.  They were taken to a bedroom and ordered to perform a "lap dance" on each other.  Doc. no. 11, ¶ 35.  They were also asked sexual questions.  In addition, the new Cheer Team members were ordered to take off their shirts and the upper-class Cheer Team members poured alcohol and ice-cold water under their bras and directly on their chests.  The new Cheer Team members were ordered to "grind" (move up and down in a sexual way) on objects.  *Id*. at ¶ 38.  Because she was blindfolded, Rudman was unable to see other persons in the room and felt as if either male or female members of the Cheer Team would sexually assault her.  According to Rudman, the new members stayed in the bedroom for about an hour, and they were blindfolded in the house for five to six hours.

At the conclusion of the event, the new Cheer Team members, who were heavily intoxicated, were ordered out of the residence and told to find their own way home.

Later in the 2020-2021 school year, a dispute occurred between some Cheer Team members and the Cheer Team coach.  The matter was referred to a UCO dean.  The official caused an anonymous survey to be distributed to the Cheer Team members and their parents.  One of the survey participants disclosed the sexual abuse and hazing during the August 2020 "unofficial" Big/Little Reveal event.

Rudman first learned of an investigation into the "unofficial" Big/Little Reveal event when a local news source published findings of the survey in March 2021.  The information was disclosed by UCO's media outlet.

UCO made no effort to warn Rudman that what had happened to her during the event would become public knowledge, and she was blindsided by the public learning of her being victimized by hazing.

After the news story broke, the Cheer Team members began discussing the contents of the story and the facts of the event on the Cheer Team GroupMe chat. The upper-class Cheer Team members threatened the new Cheer Team members with physical harm and their safety if they did not remain quiet about the abuse they suffered.

Robinson and the Cheer Team coach learned of the Cheer Team members' comments and called a meeting in March 2021. Robinson told the Cheer Team that if they did not stay quiet about the event or any other hazing activities, she would dissolve the GroupMe chat. Rudman observed Robinson and it appeared to Rudman from Robinson's demeanor that she had prior knowledge of the Cheer Team's hazing practices. During the meeting, other Cheer Team members spoke about the same sort of hazing that took place at the "unofficial" Big/Little Reveal over previous years. Robinson told the Cheer Team members that they needed to keep their mouths shut about the hazing incident, and not to discuss it among themselves or with anyone in the public. Robinson said this could result in the Cheer Team getting into trouble.

Thereafter, Robinson dissolved the GroupMe chat, rendering it impossible for Rudman or any Cheer Team members to screenshot the posts of individual members, and destroyed all evidence of its existence and content.

According to Rudman, the Cheer Team coach knew that the Cheer Team had been performing the Big/Little Reveal ritual for many years. Rudman was told that if she were ever to mention the hazing incident, she would not be allowed to set foot on the cheerleading mat, compete for a championship, or letter as a cheerleader.

Because Rudman was known throughout the UCO campus as a cheerleader, the student population knew she had been victimized by hazing. As a result of the public disclosure of the hazing, Rudman was humiliated and felt alone on campus. She suffered severe emotional distress, made worse because she had to discuss what happened with her mother and grandmother. Her grades worsened, and she became

more withdrawn from school activities. She left UCO at the end of the school year. She moved out of state and is attending classes elsewhere.

In a lawsuit filed by upper-class Cheer Team members seeking redress for the two-year suspension UCO imposed upon the Cheer Team, the members characterized the Big/Little Reveal as "Team Bonding." Doc. no. 11, ECF p. 6 n. 1.

Rudman asserts a Title IX claim of deliberate indifference to known acts of student-on-student sexual harassment against the Board. In addition, she alleges Fourteenth Amendment due process and equal protection claims and First Amendment free speech claims against Robinson.

III.

*Rule 12(b)(6) Motion*

*Rudman's Title IX and Section 1983 Claims*

<u>Title IX Claim – Deliberate Indifference to Known Acts of Student-on-Student Sexual Harassment – Against Defendant Board</u>

Rudman claims UCO discriminated against her on the basis of sex in violation of Title IX. The statute states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized that sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX. *See*, <u>Franklin v. Gwinnett County Public Schools</u>, 503 U.S. 60, 75 (1992). It has determined that Title IX may be enforced through a private right of action against a recipient of federal education funds and that a damages remedy is available for such action. *See*, <u>Cannon v. University of Chicago</u>, 441 U.S. 677, 709 (1979); <u>Franklin</u>, 503 U.S. at 76.

In <u>Davis Next Friend LaShonda D. v. Monroe County Board of Education</u>, 526 U.S. 629, 643, 648 (1999), the Supreme Court specifically recognized that a recipient of federal education funds can be held liable in damages under Title IX

10

where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment.  *Id*.  The Tenth Circuit has ruled that to state a Title IX claim based upon deliberate indifference to known acts of student-on-student sexual harassment, a plaintiff must allege that the funding recipient "'(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school.'"  Doe v. School District Number 1, Denver, Colorado, 970 F.3d 1300, 1308 (10th Cir. 2020) (quoting Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1246 (10th Cir. 1999)).

While the Supreme Court in Davis recognized Title IX liability for a funding recipient's deliberate indifference to known acts of peer sexual harassment, it also explained that the liability is limited to circumstances "wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs."  Davis, 526 U.S. at 645.  As the Supreme Court explained:

> The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and *the environment in which the harassment occurs*. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.  That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.  Moreover, because the harassment must occur under the operations of a funding recipient, the harassment *must take place in a context subject to the school district's control*.

*Id*. at 644-645 (internal quotation marks, citations, definitions, and alterations omitted) (emphasis added).

The student misconduct at issue in Davis occurred during school hours and on school grounds.  Indeed, the bulk of it took place in the classroom.  526 U.S. at 646.

The Supreme Court concluded that, in those circumstances, the funding recipient "retain[ed] substantial control over the context in which the harassment occur[ed]." *Id*. In addition, in that setting, the funding recipient "exercise[d] significant control over the harasser." *Id*.

The Board asserts that the First Amended Complaint fails to allege sufficient facts to establish two essential elements of Rudman's Title IX claim—UCO's actual knowledge of, and deliberate indifference to, prior complaints of alleged sexual harassment. The Board contends that Rudman's observation of Robinson's demeanor at the March 2021 meeting and Boyd's generic report to Robinson of possible hazing at the August 2018 Big/Little Reveal are inadequate to establish actual knowledge on the part of UCO of a substantial risk of sexual harassment to Rudman. It also asserts that Rudman sets forth no facts, only vague and conclusory statements of deliberate indifference by UCO. Further, the Board argues that the First Amended Complaint fails to allege facts sufficient to show that UCO had substantial control over the environment in which the alleged sexual harassment occurred. The Board points out that the harassment occurred at an "unofficial" Big/Little Reveal event held at an off-campus residence of two Cheer Team members. Accordingly, the Board argues that Rudman's Title IX claim fails as a matter of law.

Upon review, the court finds that the Board's substantial control argument is dispositive of Rudman's Title IX claim. Consequently, the court need not address the Board's arguments regarding UCO's actual knowledge and deliberate indifference.[2]

---

[2] The court, however, notes that with respect to the actual knowledge element, UCO could have obtained actual knowledge only through an appropriate person. Ross v. University of Tulsa, 859 F.3d 1280, 1283 (10th Cir. 2017). "An appropriate person 'is, at a minimum, an official of the [university] with authority to take corrective action [on behalf of the university] to end the discrimination.'" *Id*. (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)).

In her briefing, Rudman acknowledges that the alleged student-on-student sexual harassment occurred at an off-campus residence. However, relying upon a Kansas district court case, Weckhorst v. Kansas State University, 241 F. Supp. 3d 1154, 1169-70 (D. Kan. 2017), aff'd Farmer v. Kansas State University, 918 F.3d 1094 (10th Cir. 2019), Rudman argues that UCO had substantial control over the environment in which the harassment occurred.

In Weckhorst, the plaintiff, a female Kansas State University (KSU) student, attended an off-campus fraternity event where she became extremely intoxicated and blacked out. Id. at 1159. A male KSU student, and the fraternity's designated driver, took the plaintiff to his truck and raped her in front of about fifteen university students, some of whom took photographs and videos. Id. He then drove the plaintiff back to the off-campus fraternity house and assaulted her on the way. Id. When they arrived at the fraternity house, he took her to a "sleep room" lined with beds and raped her again. Id. He left her there, naked and passed out. Id. When she woke up several hours later, another member of the fraternity was raping her. Still intoxicated, she left the room and made her way to a nearby patio. The fraternity member followed her onto the patio and raped her again. Id. Photographs and videos were later circulated widely on social media. Id. at 1159-60. After the plaintiff filed a complaint, the university advised that it would not investigate or take any action against the fraternity members because the rapes had occurred off campus. Id. at 1160-63. The plaintiff suffered from post-traumatic stress disorder symptoms. She

Rudman asserts that Robinson had actual knowledge of the sexual harassment. While the amended pleading alleges that Robinson was responsible for UCO's Spirit Teams, including the Cheer Team, it does not set forth facts to reasonably support an inference that Robinson had authority to take corrective action on behalf of UCO to end the sexual harassment by the Cheer Team members. The court notes that the amended pleading alleges that the dispute between some of the Cheer Team members and the Cheer Team coach was referred to a UCO dean. And while the allegations indicate that Robinson met with the Cheer Team members after the harassment was disclosed and told them to stop talking about the harassment and ultimately dissolved the GroupMe chat, there are no allegations to reasonably support an inference that she had authority to take corrective action, such as the decision to suspend the Cheer Team for two years.

stopped going to classes, was forced to withdraw from a math course, and lost a prestigious scholarship. *Id*. at 1163-64.

The plaintiff filed an action against KSU alleging a violation of Title IX. On a Rule 12(b)(6) motion, the university argued that the harassment did not occur within one of its programs or activities because it had no substantial control over the context in which the off-campus rapes occurred. *Id*. at 1165-66. The district court disagreed. In determining that KSU had substantial control over the context in which the rapes occurred, so as to warrant imposition of liability under Title IX, the court cited the following factual allegations: "(1) KSU fraternities are student housing organizations that are open only to KSU students, and on its website, KSU describes its fraternities as 'Kansas State University Organizations'; (2) the director of the fraternity at issue in this case is a KSU instructor; (3) KSU promotes its fraternities on its website and to prospective students and parents; (4) KSU employs five individuals on campus in its Office of Greek Affairs, which is responsible for carrying out a number of functions to support fraternities and sororities, including administrative assistance, advisory responsibilities, education and development, serving as a liaison to chapter presidents, holding regular meetings with chapters, and conducting chapter assessments; (5) KSU has authority to regulate fraternity houses, and promulgates rules for regulating parties and certain other activities at fraternity houses and events; and (6) Dean of Student Life, Pat Bosco, approved the KSU Interfraternity Council's decision to "suspend the fraternity for the alcohol at the party at which Plaintiff was raped." *Id*. at 1167. The court also found that KSU had substantial control over the fraternity members because they were students at KSU and were under the disciplinary control of KSU. *Id*. The court concluded that while the plaintiff's allegations did not reflect that "KSU had *complete* control over the alleged assailants at the fraternity house or the fraternity parties, her allegations [did] reflect that KSU had *substantial* control over both the assailants and the fraternity." *Id*. at 1168 (emphasis in original).

Viewing the factual allegations of the First Amended Complaint in Rudman's favor, the court concludes that they fall short of the <u>Weckhorst</u> fact pattern establishing that the university had substantial control over the context in which the harassment occurred.  Rudman's factual allegations do indicate that the Cheer Team was a UCO organization for UCO students and that UCO employed Robinson, who had responsibility over the Cheer Team.  However, there are no factual allegations to indicate that UCO had any authority to regulate the private residence of the Cheer Team members, or the parties and events held by Cheer Team members at that residence.  In addition, there are no factual allegations that UCO promulgated rules regulating parties or other activities at the Cheer Team members' private residences.

Rudman argues that UCO had substantial control because it disciplined the Cheer Team.  But disciplinary authority over the Cheer Team members is not enough by itself to establish that the university controlled the location or context in which the members committed the sexual misconduct.  *See*, <u>Brown v. State,</u> 23 F.4th 1173, 1182 (9th Cir. 2022); *see also*, <u>Doe v. University of Missouri,</u> Case No. 19-cv-04229-NKL, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022) (university's very close control over student athlete was not sufficient to establish that sexual harassment which occurred off campus was under the control of the university).

Rudman argues that Title IX liability does not end at UCO's property line.  The court agrees.  Indeed, the Tenth Circuit has recognized that harassment occurring off school grounds may create liability under Title IX.  *See*, <u>Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.</u>, 511 F.3d 1114, 1121 n. 1 (10th Cir. 2008).  However, according to the Court of Appeals, "there must be some nexus between the out-of-school conduct and the school" to create that liability.  *Id*.  In <u>Weckhorst</u>, the fraternity house and fraternity event where the sexual assaults occurred were off campus, but the district court found that the plaintiff's factual allegations established that the fraternity as well as its parties and events were under

substantial control of KSU.[3]  Here, Rudman's factual allegations are not sufficient to establish a meaningful nexus between the UCO and the off campus sexual harassment at the Cheer Team members' private residence, so as to render the Board liable under Title IX for the alleged sexual harassment.[4]  The factual allegations in this case do not support a reasonable inference that the harassment took place in a context subject to the university's control.  *See*, <u>Davis</u>, 526 U.S. at 630.  Therefore, the court concludes that Rudman's Title IX claim for deliberate indifference to known acts of student-on-student sexual harassment should be dismissed without prejudice under Rule 12(b)(6).

In her papers, Rudman suggests that her factual allegations are sufficient to trigger Title IX liability based upon UCO's deliberate indifference after the student-on-student sexual harassment was disclosed by one of the survey participants in the spring of 2021.  She asserts that UCO's deliberate indifference to that harassment made her "liable or vulnerable" to further harassment.[5]  She specifically cites the Tenth Circuit's decision in <u>Farmer v. Kansas State University</u>

---

[3]  The court notes that the district court in <u>Weckhorst</u> found that the plaintiff had not alleged plausible facts establishing that the sexual assault that occurred in the truck of the KSU student between the fraternity party and the fraternity house occurred under a "program or activity" of KSU.  <u>Weckhorst</u>, 241 F. Supp. 3d at 1168, n. 45.  It also disallowed an amendment to join another plaintiff who had been sexually assaulted by a fraternity member because the alleged sexual assault occurred at a private off-campus apartment and not in relation to any fraternity event.  *Id.* at 1182.  Further, the court notes that on interlocutory appeal, the Tenth Circuit did not have occasion to address "KSU's contention that the sexual harassment of which Plaintiffs complain did not occur within a KSU program or activity and, thus, KSU is not responsible for student-on-student sexual harassment occurring off campus at fraternity parties or in fraternity houses."  *See*, <u>Farmer</u>, 918 F.3d at 1102, n. 3.

[4]  This case is also distinguishable from <u>Simpson v. University of Colorado Boulder</u>, 500 F.3d 1170 (10th Cir. 2007), which involved off-campus sexual assaults that arose out of an official university recruitment of high school football athletes.  The assaults, the Tenth Circuit found, were "the natural, perhaps inevitable, consequence of an officially sanctioned but unsupervised effort to show recruits a 'good time.'"  *Id.* at 1175.  No such circumstances are alleged by Rudman.

[5]  In <u>Davis</u>, the Supreme Court stated that a funding recipient "may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment, *i.e.*, at a minimum, causes students to undergo harassment or makes them liable or vulnerable to it."  526 U.S at 630.

which held that KSU students could state a viable Title IX claim for student-on-student harassment by alleging that the funding recipient's deliberate indifference to the students' reports of rapes made them vulnerable to further harassment. 918 F.3d at 1104. However, the court concludes that Rudman has not adequately pled factual allegations to establish that UCO's actions, such as the public disclosure of the sexual harassment, made her vulnerable to further sexual harassment. The factual allegations in this case are clearly distinguishable from those presented in Farmer, where the student-plaintiffs alleged an actual and objectively reasonable fear of running into their student-rapists, against whom KSU had taken no action, which caused the student-plaintiffs, among other things, to struggle in school, lose scholarship support, withdraw from activities the university offered to students, and avoid going anywhere on campus unaccompanied by friends or sorority sisters. Id. at 1105. There are no allegations by Rudman of an actual or objectively reasonable fear of further sexual harassment sufficient to deprive her of educational opportunities at UCO. According to her allegations, Rudman was known throughout the UCO campus as a cheerleader, and because of the public disclosure of the harassment, the student population knew she had been victimized. She alleges that she was humiliated and felt alone and suffered severe emotional distress, made worse because she had to discuss what happened to her with her mother and grandmother. The court, however, concludes that these allegations, viewed in Rudman's favor, do not show that UCO's actions, such as public disclosure of the sexual harassment, made her liable or vulnerable to further sexual harassment.[6]

---

[6] In her pleading, Rudman also alleges that after the public disclosure, the upper-class Cheer Team members on the GroupMe chat threatened her and other under-class Cheer Team members with physical harm if they did not remain quiet about the abuse they suffered. They also accused the under-class Cheer Team members of "ratting out" the Big/Little Reveal and the hazing. Rudman, however, alleges that when Robinson learned of comments made, she called the March 2021 meeting with the Cheer Team and told the Cheer Team members to keep their mouths shut about the hazing incident and not to discuss it among themselves or with anyone in public. She also

Thus, the court concludes that Rudman has failed to allege facts sufficient to state a viable Title IX claim for student-on-student harassment based upon UCO's deliberate indifference to the disclosed sexual harassment in the spring of 2021. The court therefore concludes that Rudman's Title IX claim should be dismissed without prejudice under Rule 12(b)(6).

Section 1983 Due Process Claims Against Defendant Robinson

Rudman asserts that Robinson violated her Fourteenth Amendment procedural and substantive due process rights by depriving her of her education and educational activities. The Fourteenth Amendment protects citizens from, among other things, deprivation of property without due process of law. U.S. Const. amend. XIV, § 1. "Procedural due process ensures that the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000). To state either a procedural or substantive due process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." Id. A property interest in the context of the Fourteenth Amendment Due Process Clause is a "legitimate claim of entitlement" to some benefit, as opposed to a mere "abstract need or desire" or "unilateral expectation." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

In her papers, Robinson argues that Rudman cannot state a procedural or substantive due process claim because cheerleading is not a protectible property

---

dissolved the GroupMe chat. Rudman further alleges that the Cheer Team program was "shutdown." Doc. no. 11, ¶ 5. She reveals in a footnote that UCO imposed a two-year suspension on the Cheer Team. Id. at ECF p. 6. Rudman's allegations do not support a finding that UCO's conduct, after the disclosed sexual harassment, made her "liable or vulnerable to" further sexual harassment.

interest.  To the extent that Rudman claims that her public education is a protectible property interest, Robinson contends that Rudman fails to allege facts to show that Robinson deprived Rudman of her education.  Robinson points out that Rudman was not suspended or removed from UCO.  Instead, she voluntarily transferred to another university at the end of the 2020-2021 school year.  Robinson also argues that Rudman's due process claims are barred by qualified-immunity.

Rudman responds that she had a protected property interest in her continued education at UCO.  She also contends that she was deprived of that property interest by Robinson because her environment became so objectively intolerable that she was subjected to "constructive expulsion" from the university.

Rudman had a protected property interest in her continued education at UCO. *See*, Gaspar v. Bruton, 513 F.2d 843, 850 (10th Cir. 1975); Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1181 (10th Cir. 2001).[7] However, the court concludes that Rudman fails to allege sufficient facts to plausibly establish that she was constructively expelled from UCO.

Assuming without deciding that a plaintiff may be able to show deprivation of a property interest in continued education through "constructive expulsion," *see*, Garcia v. Clovis Municipals, Case No. CIV 02-1101 WJ/KWR, 2003 WL 27385436, at *4 (D.N.M. March 3, 2003) (discussing Seamons v. Snow, 84 F.3d 1226, 1234 (10th Cir. 1996), and Stevenson v. Martin County Bd. of Educ., No. 99-2685, 2001 WL 98358 (4th Cir. Feb. 6, 2001)), the facts in the amended pleading do not give rise

---

[7] In her briefing, Rudman suggests that UCO's student code, Title IX policy and other anti-discrimination and anti-harassment policies established protected property interests.  The court, however, concludes that the First Amended Complaint fails to allege sufficient facts to establish that the policies developed by UCO created and defined constitutionally protected property interests.  Procedural rules do not by themselves create a constitutionally protected property interest.  *See*, Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1449, 1502 (10th Cir. 1984). The court further agrees with the Board that Rudman did not have a protected property interest in cheerleading.  *See*, Seamons v. Snow, 84 F.3d 1226, 1235 (10th Cir. 1996) (no protected interest in participating in sports).

to a reasonable inference that Robinson "deliberately created an intolerable environment in order to force [Rudman] to leave and that the conditions within the [university] were so objectively intolerable that [Rudman] had no choice but to leave." <u>Garcia</u>, 2003 WL 27385436, at *4.

Construed in her favor, the First Amended Complaint alleges that Rudman was subjected to sexual exploitation and sexual harassment in August 2020; the harassment was disclosed by a survey participant in the spring of 2021; UCO disclosed to the media what happened to Rudman and other under-class Cheer Team members during the Big/Little Reveal in 2020; Rudman did not know about an investigation into the Big/Little Reveal until it was disclosed to the media and UCO did not warn her that what happened at the unofficial event would be made public knowledge; the upper-class Cheer Team members threatened the under-class Cheer Team members with their physical safety and accused the under-class Cheer Team members of "ratting out" the Big/Little Reveal event and the hazing; Robinson told the Cheer Team members to keep their mouths shut about the Big/Little Reveal and to not discuss it among themselves or to anyone in the public;[8] Robinson dissolved the GroupMe Chat, rendering it impossible for Rudman to screenshot the posts by individual Cheer Team members, and Robinson destroyed all evidence of its existence and content; the student population knew Rudman had been victimized by the hazing and sexual abuse because she was known as a cheerleader; and as a result of the public disclosure of the hazing, Rudman was humiliated and felt alone on campus and suffered emotional distress, made worse because she had to discuss what happened to her with her mother and grandmother.

---

[8] In her pleading, Rudman alleges that she was told that if she ever mentioned the hazing incident, she would never be allowed to set foot on the cheerleading mat, compete for a championship or letter as a university cheerleader. Rudman, however, does not allege that Robinson made those statements to her.

While the court does not minimize how difficult these experiences must have been for Rudman, the court concludes that the circumstances alleged by Rudman are not sufficient to demonstrate that her learning conditions at UCO were such that a reasonable person would have felt compelled to leave the university.  Further, the allegations are insufficient to show that Robinson deliberately created an intolerable environment to force Rudman to leave.[9]  Thus, the court concludes that Rudman fails to allege facts to establish deprivation by Robinson of her protected property interest in continued education at UCO.  As a result, the court concludes that Rudman fails to allege facts establishing that she has plausible procedural and substantive due process claims against Robinson under the first prong of the qualified immunity analysis.  Further, the court concludes that even if Rudman has alleged facts sufficient to state plausible procedural and substantive due process claims, Robinson would still be entitled to qualified immunity as Rudman has not identified clearly established law permitting a procedural or substantive due process claim based on the "constructive expulsion" theory.[10]  The court concludes that the procedural and substantive due process claims should be dismissed without prejudice under Rule 12(b)(6) based upon both prongs of the qualified immunity analysis.[11]

---

[9] The court notes there are no allegations that Robinson was involved in disclosing the Big/Little Reveal to the public.

[10] In her briefing, Rudman relies upon the district court's decision in Garcia to show clearly established law.  That is not sufficient.  See, Ullery v. Bradley, 949 F.3d 1282, 1300 (10th Cir. 2020) ("'[D]istrict court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity.'") (quoting Camreta v. Greene, 563 U.S. 692, 709 n. 7 (2011)).

[11] Generally, state actors are only liable for their own acts, not for violent acts of third parties.  See, Rost, 511 F.3d at 1125.  However, there are two exceptions to this general rule—the "special relationship" doctrine and the "danger creation" theory.  Id. at 1126.  "The special relationship doctrine exists when the state [has] assume[d] control over an individual sufficient to trigger an affirmative duty to provide protection to that individual."  Id. (quotation marks and citation omitted).  No circumstances exist to establish a "special relationship" between Rudman and UCO.  "[T]he danger creation theory provides that a state may also be liable for an individual's safety if

<u>Section 1983 Equal Protection Claim Against Defendant Robinson</u>

Rudman asserts that Robinson violated her equal protection rights.   "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws[.]"   <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985) (internal quotation marks and citation omitted).

Robinson contends that Rudman's amended pleading fails to state a plausible equal protection claim.  Citing <u>Phan v. Colorado Legal Services</u>, No. 18-cv-01403-GPG, 2018 WL 10335669 (D. Colo. June 19, 2018), Robinson contends that Rudman fails to make a "threshold showing" that she was treated differently than others with whom she was similarly situated.  <i>Id</i>. at *3.

In response, Rudman asserts that "this is not the 'class of one' situation" as discussed in <u>Phan</u>.  Doc. no. 35, ECF p. 23.  Rudman asserts that her action against Robinson is "contemplated" by the decisions in <u>Starrett v. Wadley</u>, 876 F.2d 808, 814 (10th Cir. 1989) and <u>Harman v. Oklahoma ex rel. Northern Oklahoma Board of Regents</u>, No. CIV-07-327-C, 2007 WL 1674205 (W.D. Okla. June 7, 2007), and she contends that she has plausibly pleaded such an action.  <i>Id</i>.

The <u>Starrett</u> and <u>Harman</u> cases determined that a supervisor's sexual harassment of a state employee and corresponding retaliation after complaints were

---

it created the danger that harmed the individual." <i>Id</i>. To the extent the First Amended Complaint can be construed to allege a substantive due process claim based upon the danger creation theory, the court finds that Rudman's factual allegations are not sufficient to state a plausible claim. One of the factors Rudman must satisfy to state a plausible claim is that Robinson's conduct, when viewed in total, shocks the conscience. <i>Id</i>. at 1126. To do this, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." <u>Camuglia v. City of Albuquerque</u>, 448 F.3d 1214, 1222 (10th Cir. 2006) (quotation marks and citation omitted). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." <i>Id</i>. at 1222-23 (quotation marks and citation omitted). The court finds Rudman's factual allegations regarding Robinson's conduct, viewed in total and in favor of Rudman, are not sufficient to rise to the conscience-shocking level.

made about the harassment violated the state employee's right to equal protection of the law.  <u>Starrett</u>, 876 F.2d at 814-15; <u>Harman</u>, 2007 WL 1674205, at *5.  However, the alleged sexual harassment in this case was committed by a student, rather than by Robinson or any other UCO employee supervised by Robinson.  The court finds that Rudman's factual allegations do not give rise to an equal protection claim based upon the cited authority of <u>Starrett</u> and <u>Harman</u>.

Although not discussed by the parties, the court recognizes that the Tenth Circuit has held that "a governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment."  <u>Murrell v. Sch. Dist. No. 1, Denver, Colo.</u>, 186 F.3d 1238, 1250 (10th Cir. 1999).  The appellate court determined that the plaintiff had stated a § 1983 equal protection claim against the principal and teachers who "actually knew of and acquiesced in" a student's sexual harassment of another student "by refusing to reasonably respond to it."  *Id.*

Nevertheless, the concludes that <u>Murrell</u> does not support an equal protection claim based upon factual allegations in this case.  Rudman alleges that Robinson had actual knowledge of sexual harassment in the Cheer Team program because of Boyd's report, in 2019, of sexual exploitation and harassment hazing that occurred in the Big/Little Reveal event in 2018.  However, there are no factual allegations that any of the perpetrators of the harassment in the Big/Little Reveal event in 2020 were the same persons as the perpetrators in the 2018 event.  The Tenth Circuit recognized in <u>Rost</u> that it had not resolved, for purposes of a Title IX deliberate indifference to known acts of student-on-student sexual harassment claim, the issue of "whether notice of prior complaints as opposed to notice of the current harassment for which redress is sought triggers liability under Title IX."  511 F.3d at 1119.  And in <u>Murrell</u>, the Tenth Circuit stated that "[i]n order to state a claim of 'deliberate' discriminatory conduct, [plaintiff] must state facts sufficient to allege '[defendant] actually knew of and acquiesced in' [the student's] behavior."  186 F.3d at 1250.

23

The <u>Murrell</u> plaintiff alleged facts to show that the principal and teachers specifically knew of the student's sexual harassment of the other student and failed to remedy it. <u>Id</u>. Here, Rudman does not allege that Robinson knew of any harassment by the upper-class Cheer Team members of Rudman or the other new Cheer Team members prior to the August 2020 event. While Rudman alleges that Robinson knew about the August 2020 event after it was disclosed by the survey participant, Rudman does not allege any facts sufficient to establish that Robinson "consciously acquiesce[d]" in the sexual harassment. <u>Murrell</u>, 186 F.3d at 1251. The court therefore concludes that Rudman's equal protection claim against Robinson should be dismissed without prejudice under Rule 12(b)(6) based on the first and second prongs of the qualified immunity analysis.

<u>Section 1983 Free Speech Claim</u>

Rudman further claims that Robinson violated her First Amendment rights to free speech. Although not clear, it appears that Rudman's claim may be premised upon both prior restraint of speech and retaliation for speech.

A "prior restraint" is a law, regulation, or order that suppresses speech based upon the speech's content and in advance of its actual expression. <u>Taylor v. Roswell Independent School Dist.</u>, 713 F.3d 25, 42 (10th Cir. 2013). "[U]nlike an adverse action taken in response to actual speech, a [prior restraint] chills potential speech before it happens." <u>Brammer-Hoelter v. Twin Peaks Charter Acad.</u>, 492 F.3d 1192, 1209 (10th Cir. 2007). "Prior restraints generally take one of two classic forms: judicial injunctions and administrative licensing schemes." <u>Taylor</u>, 713 F.3d at 42. To state a traditional First Amendment prior restraint claim, a plaintiff must allege facts to show that "(1) [she] was required to apply to a decisionmaker for approval before engaging in protected speech; (2) the decisionmaker was empowered to determine whether the applicant should be granted permission to engage in the proposed speech; (3) approval of the application required action by the decisionmaker; and (4) approval is not a matter of routine, but involves the exercise

of judgment on a case-by-case basis." Sells v. Upper Pine River Fire Protection District, No. 18-cv-02194-CMA-KLM, 2021 WL 1172680, at *4 (D. Colo. Mar. 29, 2021).

Rudman fails to plead facts to plausibly show any of the elements of a traditional prior restraint claim. Initially, Rudman doesn't allege that she intended or planned to engage in speech about the Big/Little Reveal after the March 2021 meeting. In addition, she doesn't allege that she was required to apply for approval to engage in such speech, and she does not allege such approval was denied by Robinson. See, Kesterson v. Kent State University, 967 F.3d 519, 526 (6th Cir. 2020) (holding that university softball coach did not impose prior restraint by advising player not to tell anyone about a sexual assault because the "alleged restraint must impose a 'legal impediment'" and the coach "did nothing of the sort.").

While traditional prior restraint claims involve judicial orders or administrative licensing schemes, courts have found more informal conduct, such as an employer directing an employee not to speak on a certain subject, can also rise to the level of a prior restraint. See, Berger v. City and County of Denver, No. 18-cv-01836-KLM, 2019 WL 2450955, at *5 (D. Colo. June 11, 2019) (citing Dirks v. Bd. of Cty. Comm'rs. of Ford Cty., No. 15-CV-7997-JAR, 2016 WL 2989240, at *5 (D. Kan. May 24, 2016)). However, for a plaintiff to have standing to assert such a claim, the Tenth Circuit requires the plaintiff to allege more than "that the restraint has a subjective chilling effect on [her] speech" to "satisfy the injury-in-fact requirement." Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1182 (10th Cir. 2010). According to the Tenth Circuit, "a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it 'arise[s] from an objectively justified fear of real consequences.'" Id. (quoting Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1088 (10th Cir. 2006)). In addition, the plaintiff must allege that her speech was actually chilled. Id. at 1183-84 (deciding that the plaintiffs did not have standing

for prior restraint claims because "nothing in the record indicat[ed] their speech . . . was altered or deterred in any way" by the alleged conduct nor "support[ed] the conclusion [that the conduct] caused [the] Plaintiffs a concrete, judicially cognizable injury.").

Here, Rudman fails to allege that Robinson's conduct altered or deterred her in any way from speaking about the Big/Little Reveal.  There are no allegations to indicate that Robinson's conduct caused Rudman not to speak or to alter her speech.  Consequently, the court concludes that Rudman's prior restraint claim based on informal conduct is subject to dismissal without prejudice for lack of standing.  The traditional prior restraint claim is subject to dismissal under Rule 12(b)(6) based upon the first prong of the qualified immunity analysis.

"To state a First Amendment retaliation claim, a plaintiff must allege facts showing '(1) that [she] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'"  Irizarry v. Yehia, 38 F.4th 1282, 1288 (10th Cir. 2022) (quoting Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The court concludes that Rudman has failed to state a plausible retaliation claim.  There are no allegations to reasonably support an inference that she engaged in constitutionally protected activity.  Rudman does not allege that she was the survey participant who disclosed the sexual harassment at the August 2020 "unofficial" Big/Little Reveal event.  She also does not allege that she made any comments during the March 2021 meeting that Robinson had called or that she made any comments on the Cheer Team's GroupMe chat which led to the meeting.

In addition, the court concludes that Rudman has not alleged facts to plausibly show that Robinson caused her to suffer an injury that would chill a person of

ordinary firmness from continuing to speak.  In the context of a retaliation claim, an "injury" is an adverse consequence that the plaintiff suffers at the hands of the defendant.  Irizarry, 38 F.4th at 1288, n. 6.  The Tenth Circuit has found that physical and verbal intimidation may constitute cognizable injuries.  Id. (citing Van Deelen v. Johnson, 497 F.3d 1151, 1157 (10th Cir. 2007).  While Rudman points to her allegations that during the March 2021 meeting, Robinson threatened to dissolve the Cheer Team's GroupMe chat and told the Cheer Team members that their comments could get the Cheer Team program in trouble, the court finds that these allegations, even as viewed in Rudman's favor, are not sufficient to demonstrate chilling a person of ordinary firmness from continuing to speak out about the "unofficial" Big/Little Reveal event.[12]  The factual circumstances in this case are clearly distinguishable from Van Deelen v. Johnson, where the deputy sheriff threatened to shoot plaintiff if he brought any more tax appeals.  Further, while Rudman alleges that Robinson dissolved the GroupMe chat and all evidence of its existence and content, she does not allege any facts to plausibly show that those actions caused her injury.

Because Rudman has failed to allege facts sufficient to state a plausible First Amendment retaliation claim against Robinson, the court finds that this claim should be dismissed without prejudice under Rule 12(b)(6) based on the first prong of qualified immunity analysis.

---

[12] To support her retaliation claim, Rudman also points to allegations that she was told if she were to ever mention the hazing incident, she would never be allowed to set foot on the cheerleading mat, compete for a championship, or letter as a university cheerleader.  Doc. no. 11, ¶ 59.  However, as previously noted, Rudman does not allege that Robinson made these statements to her.

IV.

*Rule 12(b)(6) Motion*

*Boyd's Title IX and Section 1983 Claims*

<u>Title IX Retaliation Claim Against Defendant Board</u>

Boyd claims the Board suspended and terminated her employment in retaliation for reporting incidents of sexual harassment and hazing.  Title IX prohibits retaliation against individuals because they have complained of sex discrimination.  *See*, <u>Hiatt v. Colorado Seminary</u>, 858 F.3d 1307, 1315 (10th Cir. 2017) (citing <u>Jackson v. Birmingham Board of Education</u>, 544 U.S. 167, 183 (2005)).  As with § 1983 actions, Oklahoma's two-year statute of limitations for personal injury actions, 12 O.S. 2021 § 95(A)(3), applies to the Title IX claim. <u>Varnell v. Dora Consol. School District</u>, 756 F.3d 1208, 1213 (10th Cir. 2014) (same state statute of limitations for personal injury actions applies to § 1983 and Title IX claims).

To establish her Title IX retaliation claim, Boyd may rely on the <u>McDonnell Douglas</u>[13] burden-shifting framework.  <u>Hiatt</u>, 858 F.3d at 1315 n. 8.  To state a prima facie case of Title IX retaliation, Boyd must allege: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.  <u>Berry v. Mission Group Kansas, Inc.</u>, 463 Fed. Appx. 759, 766 (10th Cir. 2012) (quoting <u>Twigg v. Hawker Beechcraft Corp.</u>, 659 F.3d 987, 988 (10th Cir. 2011)).

At the outset, the Board asserts that a portion of Boyd's Title IX claim is barred by the statute of limitations.  The Board maintains any alleged conduct, including Boyd's suspension, which occurred prior to January 31, 2020—two years before the filing of the January 31, 2022 complaint—is time barred.  Boyd counters

---

[13] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-805 (1973).

that while her suspension occurred before January 31, 2020, she did not know at that time that it was in retaliation for her engaging in protected activity.  According to Boyd, it was not until the media disclosed the sexual harassment and abuse from the August 2020 Big/Little Reveal in March of 2021 that she learned she may have been "injured" for purposes of Title IX.

The statute of limitations is an affirmative defense, which "may be resolved on a Rule 12(b)(6) motion to dismiss, 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  Cosgrove v. Kansas Dept. of Social and Rehabilitative Services, 332 Fed. Appx. 463, 465 (10th Cir. 2009) (quoting Aldrich v. McCullough Props, Inc., 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

While state law supplies the limitations period for the Title IX claim, the accrual of the claim is determined by federal law.  Varnell, 756 F.3d at 1215.  A Title IX claim accrues "'when the plaintiff can file suit and obtain relief.'"  Id. at 1217 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  According to the First Amended Complaint, Boyd's suspension occurred in the fall of 2019, well before January 31, 2020.  However, relying on the discovery rule, Boyd asserts that her Title IX claim did not accrue until March of 2021 because she did not know about her injury until the media reported the sexual harassment and abuse from the August 2020 "unofficial" Big/Little Reveal.  The Tenth Circuit has not ruled on whether the discovery rule applies to a Title IX claim.  See, Varnell, 756 F.3d 1208.  However, even if the discovery rule applied, the court concludes that Boyd knew when she was suspended all the facts necessary to sue and recover damages.[14]  The court therefore

---

[14] Boyd's Title IX retaliation claim based on her suspension appears premised upon her reporting of the sexual exploitation and harassment hazing at the August 2018 Big/Little Reveal event several weeks prior to her suspension.  According to the amended pleading, the media disclosed sexual harassment and abuse from the August 2020 "unofficial" Big/Little Reveal event.

concludes that Boyd's Title IX claim based on her suspension is subject to dismissal as barred by the applicable two-year statute of limitations.

The Board acknowledges that Boyd's Title IX claim based on alleged conduct which occurred after January 31, 2020 is timely. However, it asserts that Boyd cannot establish a prima facie case of retaliation under Title IX because she cannot demonstrate the first two elements—she engaged in protected opposition to discrimination and that she suffered any materially adverse action.[15]

As to the latter assertion, the Board proceeds on the assumption that she was constructively discharged. The Board contends that Boyd fails to allege any facts to establish that she was constructively discharged. According to defendant, Boyd's factual allegations do not demonstrate that her working conditions were so difficult that a reasonable person in her position would have felt compelled to resign. However, Boyd responds that her amended pleading clarifies that she alleges she was terminated from her employment, and such termination, under Tenth Circuit precedent, constitutes materially adverse action. In reply, the Board acknowledges the clarification and withdraws its argument that Boyd cannot establish any materially adverse action. As such, the court need not address the issue.

Regarding the former assertion—not engaging in protected opposition to discrimination—the court notes that the Board has not cited or discussed any authority to support its position that Boyd has not alleged any "opposition" activity. Without developed argument, the court finds that the Board has waived the issue. *See*, Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n. 6 (10th Cir. 1999) (superficial development of argument may result in waiver of the argument).

---

[15] The Board does not specifically challenge Boyd's ability to demonstrate the third element—a causal connection between the protected activity and materially adverse action.

Consequently, the court concludes that Boyd's Title IX retaliation claim against the Board based upon her termination survives challenge under Rule 12(b)(6).[16]

Section 1983 Due Process Claims Against Defendant Robinson

Boyd asserts that defendant Robinson violated her Fourteenth Amendment procedural and substantive due process rights in the termination of her employment. To state either a procedural or substantive due process claim, "'a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.'" Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007) (quoting Hyde Park Co., 226 F.3d at 1210)).

Boyd contends that she had a property interest in continued employment. Property interests are not created by the Due Process Clause of the Fourteenth Amendment, but rather are "created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." Teigen, 511 F.3d at 1079 (quotation marks and citation omitted). In the context of a public employee like Boyd, the touchstone is whether, under state law, the public employee has a "legitimate claim of entitlement" in continued employment, as opposed to a "unilateral expectation" or "an abstract need or desire" for it. Farthing v. City of Shawnee, Kan. 39 F.3d 1131, 1135 (10th Cir. 1994). State law may take the form of "state statutes, local ordinances, established rules, or mutually explicit understandings." Id. (quoting Dickeson v. Quarberg, 844 F.2d 1435, 1437 (10th Cir. 1988)).

As previously noted, procedural protections alone do not create a claim of entitlement to continued public employment. Rather, a legitimate claim of entitlement to continued public employment arises only when there are substantive

---

[16] Retaliation against a person because that person has complained of sex discrimination is a form of intentional sex discrimination encompassed by Title IX's private cause of action. See, Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

restrictions on the ability of the employer to terminate the employee.  *See*, Asbill v. Housing Authority, 726 F. 2d 1499, 1502 (10th Cir. 1984).

Upon review of the complaint, the court concludes that Boyd has failed to allege facts sufficient to show that she had a legitimate claim of entitlement to continued employment with UCO.  Although Boyd points to allegations about the existence of an employee handbook as well as other policies of UCO, there are no allegations in the First Amended Complaint to support that the handbook or the other policies altered the at-will employment relationship between Boyd and UCO, by restricting UCO's discretion to terminate Boyd's employment.  Because Boyd fails to allege a protected property interest in continued employment with UCO, the court concludes that she has failed to allege a plausible procedural or substantive due process claim.  Teigen, 511 F.3d at 1078.  The court thus concludes that Boyd's Fourteenth Amendment procedural and substantive due process claims against Robinson should be dismissed without prejudice under Rule 12(b)(6) based on the first prong of the qualified immunity analysis.

Section 1983 Equal Protection Claim

Boyd additionally asserts that Robinson violated her Fourteenth Amendment equal protection rights by terminating her employment in retaliation for reporting incidents of sexual harassment.

Robinson contends that Boyd's equal protection claim is subject to dismissal because Boyd fails to allege any facts to show she received different treatment from others similarly situated.  *See*, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (To bring a "class-of-one" equal protection claim, the plaintiff must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").  Boyd, in response, clarifies that she is not basing her claim on a "class-of-one" theory to support her equal protection claim.  Rather, she asserts that her claim is based on engaging in

protected activity by reporting numerous acts of sexual harassment and sexual exploitation.

Upon review, the court concludes that Boyd's allegations are insufficient to state a plausible equal protection claim. Boyd's claim is in essence a retaliation claim under the Equal Protection Clause. However, the majority of circuit courts that have addressed the issue, including the Tenth Circuit, have held that a retaliation claim cannot be sustained under the Equal Protection Clause of the Fourteenth Amendment. *See*, Wilcox v. Lyons, 970 F.3d 452, 461 (4th Cir. 2020) (citing cases, including the Tenth Circuit decision in Teigen, 511 F.3d at 1084-1086). And the Fourth Circuit in Wilcox specifically held that an employee's allegations that the termination occurred in retaliation for a complaint of sexual harassment and discrimination did not suffice to state a claim under the Equal Protection Clause. According to the Fourth Circuit, a retaliation claim based upon reporting alleged sex harassment and discrimination "does not implicate disparate treatment on the basis of a classification forbidden by the Equal Protection Clause." Wilcox, 970 F.3d at 460. The Fourth Circuit's ruling in Wilcox persuasive. The court thus finds that Boyd's Fourteenth Amendment equal protection claim should be dismissed without prejudice under Rule 12(b)(6) based on the first prong of the qualified immunity analysis.

Section 1983 Free Speech Claim

Lastly, Boyd claims Robinson violated her First Amendment rights to free speech by terminating her employment after reporting sexual harassment.

"'[P]ublic employees do not surrender *all* their First Amendment rights by reason of their employment.'" Knopf v. Williams, 884 F.3d 939, 944 (10th Cir. 2018) (quoting Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (emphasis in original)). To determine whether a public employer violated the First Amendment by terminating an employee based on protected speech, the court applies the "*Garcetti/Pickering* test," which consists of five elements. Knopf, 884 F.3d at 945. The elements are:

"'(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.'" *Id*. (quoting <u>Trant v. Oklahoma</u>, 754 F.3d 1158, 1165 (10th Cir. 2014)).  "'The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury.'" *Id*.

Although Robinson challenges four of the five elements, the court concludes that the first element is dispositive of Boyd's free speech claim.  The Tenth Circuit has stated: "[i]f the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'"  <u>Brammer-Hoelter v. Twin Peaks Charter Academy</u>, 492 F.3d at 1202 (quoting <u>Garcetti</u>, 547 U.S at 422).

If an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the employee's official duty, the statements are made pursuant to the employee's official duties.  <u>Brammer-Hoelter</u>, 492 F.3d at 1202.  Boyd's factual allegations, as she acknowledges in briefing, *see*, doc. no. 34, ECF p. 24-25, establish that her reporting of sexual harassment and hazing to Robinson was pursuant to her official duties.  Indeed, Boyd alleges in the complaint that she was a mandatory reporter of sexual harassment, sexual exploitation, sexual discrimination, and hazing.  And as a "Responsible Employee," she had a legal duty to report any incidents of sexual harassment, sexual discrimination, or other violations of Title IX. Doc. no. 11, ¶ 12.  Given these allegations and Boyd's acknowledgment in briefing, the court concludes that Boyd's statements were made pursuant to her official duties.

Consequently, the statements were not protected.  *See*, <u>Garcetti</u>, 547 U.S. at 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").  The court concludes that Boyd's First Amendment free speech claim should be dismissed without prejudice under Rule 12(b)(6) based on the first prong of the qualified immunity analysis.

V.

*Rule 12(b)(5) Motion*

Both defendants have moved to dismiss plaintiffs' First Amended Complaint under Rule 12(b)(5), alleging insufficient service of process.  As stated, a motion under Rule 12(b)(5) "challenges the mode or lack of delivery of a summons and complaint." <u>Gallan</u>, 480 F.Supp.3d at 1178.  Plaintiffs bear the burden of demonstrating that they complied with all statutory and due process requirements. <u>Fisher</u>, 531 F.Supp.2d at 1260.  If plaintiffs fail to satisfy their burden, the court has the option to dismiss the action or quash the process without dismissal. <u>Pell,</u> 711 F.2d at 950 n. 2; <u>Gregory</u>, 942 F.2d at 1500; *see also*, 5B Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 1354 (3d ed. 2004).

<u>Defendant Board</u>

Rule 4(j)(2), Fed. R. Civ. P., establishes the proper method of serving a state, a municipal corporation, or any other state-created governmental organization.  It provides for service by "(A) delivering a copy of the summons and of the complaint to its chief executive officer;" or "(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Oklahoma law provides for service of a state, municipal corporation, or other governmental organization "by delivering a copy of the summons and of the petition to the officer or individual designated by specific statute; however, if there is no statute, then upon the chief executive officer or a clerk, secretary or other

35

official whose duty it is to maintain the official records of the organization."  12 O.S. § 2004(C)(1)(c)(5).

Plaintiffs state that Oklahoma law permits service of a state, municipal corporation, or other governmental organization by "mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee."  12 O.S. § 2004(C)(2)(b).  Plaintiffs contend that they obtained service on the defendant Board by mail.  They point out that strict compliance with the statute is not required for the court to have jurisdiction over defendant Board; only substantial compliance is required.  However, if the court finds a defect in the service, they request that the court quash the service upon defendant Board rather than dismiss the action.

Upon review, the court concludes that plaintiffs have failed to satisfy their burden of demonstrating that they complied with Oklahoma statutory requirements for service with respect to the Board.  Although plaintiffs used certified mail for service, they did not restrict delivery to the addressee, as required by statute.  Moreover, the addressee was not the chief executive officer, clerk, secretary or other official whose duty it is to maintain the official records of the Board.  Instead, the addressee was the Board.   Further, there is no showing that the person who accepted the certified mail on the Board's behalf was a person authorized to accept service of process.

While the failure to specify restricted delivery does not prevent substantial compliance with the statute, *see*, Hukill v. Oklahoma Native American Domestic Violence Coalition, 542 F.3d 794, 802 (10th Cir. 2008), the court concludes that plaintiffs' failure to show that an authorized person received the service documents via certified mail precludes a finding that plaintiffs substantially complied with the statute.   The court therefore concludes that plaintiffs' service of process upon defendant Board was invalid.

Rather than dismissing Boyd's Title IX action against the Board under Rule 12(b)(5), the court will quash service upon the Board and give Boyd an opportunity to re-serve the Board.  *See*, Pell, 711 F.2d at 950 n. 2.  Boyd will have 30 days to re-serve the First Amended Complaint upon defendant Board, unless Boyd, as permitted below, files a Second Amended Complaint.  If Boyd files a Second Amended Complaint, Boyd shall serve that pleading in accordance with Rule 4(j)(2).

As to Rudman's Title IX action against the Board, the court finds no reason to quash service rather than to dismiss action without prejudice.  Therefore, the court will also dismiss without prejudice Rudman's Title IX action against the Board under Rule 12(b)(5) for invalid service, in addition to its dismissal without prejudice of Rudman's Title IX claim under Rule 12(b)(6).

Defendant Robinson

Rule 4(e), Fed. R. Civ. P., sets forth the proper method of serving an individual.  It states that an individual may be served by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Plaintiffs state that state law permits service of an individual by "mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee."  12 O.S. § 2004(C)(2)(b).  According to plaintiffs, Robinson was served in this manner and dismissal is not appropriate.

Upon review, the court concludes that plaintiffs have failed to satisfy their burden of demonstrating that they complied with Oklahoma statutory requirements for service with respect to Robinson.  Plaintiffs did not restrict delivery of the

certified mail to Robinson, and there is no showing that the individual who picked up the certified mail at the postal facility was Robinson, or a person authorized by Robinson to accept service on her behalf.  The failure of plaintiffs to show that Robinson or an authorized person received the service documents via certified mail prevents a finding that plaintiffs substantially complied with the statute.  Hukill, 542 F.3d at 802.

Because the court has dismissed without prejudice Rudman's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(6) based on qualified immunity, the court finds no reason to quash service rather than to dismiss Rudman's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(5) for invalid service.   Thus, the court will also dismiss Rudman's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(5) without prejudice.

Because the court has dismissed without prejudice Boyd's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(6), the court also finds no reason to quash service rather than to dismiss Boyd's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(5) for invalid service.  Therefore, the court will dismiss Boyd's 42 U.S.C. § 1983 action against Robinson under Rule 12(b)(5) without prejudice.

VI.

*Requests to Stay Ruling on Motions to Dismiss Pending Amendment or Until Discovery Establishes Plaintiffs Cannot as a Matter of Law State Sufficient Facts*

In their papers, Rudman and Boyd requests that if the court finds defendants' motions have merit, the court stay its ruling until facts can be developed or after they can amend the First Amended Complaint to cure pleading defects.

Upon review, the court declines to stay its ruling.  A ruling was necessary for the court to explain why plaintiffs' claims, other than the Title IX claim alleged by Boyd, are subject to dismissal under Rule 12(b)(6) and Rule 12(b)(5).

However, because the court cannot conclude, as a matter of law, that an amendment of one or more of plaintiffs' claims would be futile, the court will permit

38

plaintiffs to file, within 21 days of this order, a Second Amended Complaint, *consistent with the strictures of Rule 11*, Fed. R. Civ. P., to cure any deficiencies in the First Amended Complaint. If plaintiffs file a Second Amended Complaint within the time prescribed, they must serve the Second Amended Complaint upon defendants in accordance with Rule 4, Fed. R. Civ. P. If plaintiffs do not file a Second Amended Complaint within the time prescribed, this action shall proceed on Boyd's Title IX retaliation claim alleged in the First Amended Complaint and Boyd shall re-serve the First Amended Complaint on the Board within the time previously specified by the court.

## VII.

### *Rule 21 Motion*

In addition to seeking dismissal of plaintiffs' claims, defendants have moved for severance of plaintiffs' claims against them pursuant to Rule 21, Fed. R. Civ. P. Under Rule 21, the court may "sever any claim against a party." If claims are severed under Rule 21, they "become independent actions with separate judgments entered in each." Chrysler, 928 F.2d at 1519 n. 8.

In light of the court's rulings, the court finds it unnecessary to address whether the claims of plaintiffs should be severed. At this time, Boyd's Title IX claim is the only claim which remains pending. The court, however, has granted plaintiffs leave to file a Second Amended Complaint. If a Second Amended Complaint is filed and claims against both defendants against proceed to discovery, defendants may renew their motion, or the court may, if appropriate, raise the issue *sua sponte*. *See*, United States v. National R. R. Passenger Corp., No. CIV.A. 86-1094, 2004 WL 1335723, at *6 (E.D. Pa. June 15, 2004) ("Rule 21 permits a court to sever claims sua sponte."). Consequently, the court will deny defendants' motion for severance without prejudice to re-urging.

VIII.

*Conclusion*

For the reasons stated, the court **ORDERS** as follows:

Defendant Kay Robinson's Motion to Dismiss Claims by Plaintiff Sierra Rudman (doc. no. 14) is **GRANTED**.   Plaintiff Sierra Rudman's Fourteenth Amendment procedural and substantive due process and equal protection claims and First Amendment free speech claims under 42 U.S.C. § 1983 against defendant Kay Robinson are dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P., based upon qualified immunity.   The § 1983 claims against defendant are also dismissed without prejudice under Rule 12(b)(5), Fed. R. Civ. P.

Plaintiff Sierra Rudman is **GRANTED** leave to file, within 21 days, a Second Amended Complaint, to cure any of the deficiencies in  her First Amended Complaint, against defendant Kay Robinson.   If plaintiff files a Second Amended Complaint, plaintiff will be required to effect service of process for that pleading on defendant in accordance with Rule 4, Fed. R. Civ. P.

 Defendant, State of Oklahoma, *ex rel*. Regional University System of Oklahoma and The University of Central Oklahoma's Motion to Dismiss Rudman's Claims (doc. no. 15) is **GRANTED**.   Plaintiff Sierra Rudman's claim under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681(a), against defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma, is dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P.   The Title IX claim against defendant is also dismissed without prejudice under Rule 12(b)(5), Fed. R. Civ. P.

Plaintiff Sierra Rudman is **GRANTED** leave to file, within 21 days, a Second Amended Complaint to cure any of the deficiencies in her Title IX claim against defendant State of Oklahoma, *ex rel.* Board of Regents for the Regional University System of Oklahoma.   If plaintiff files a Second Amended Complaint, plaintiff will

be required to effect service of process for that pleading on defendant in accordance with Rule 4, Fed. R. Civ. P.

Defendant Kay Robinson's Motion to Dismiss Claims by Plaintiff Calyn Boyd (doc. no. 13) is **GRANTED**.  Plaintiff Calyn Boyd's Fourteenth Amendment procedural and substantive due process and equal protection claims and First Amendment free speech claim under 42 U.S.C. § 1983 against defendant Kay Robinson are dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P., based upon qualified immunity.  The § 1983 claims against defendant are also dismissed without prejudice under Rule 12(b)(5), Fed. R. Civ. P.

Plaintiff Calyn Boyd is **GRANTED** leave to file, within 21 days, a Second Amended Complaint, to cure any of the deficiencies in her First Amended Complaint, against defendant Kay Robinson.  If plaintiff files a Second Amended Complaint, plaintiff will be required to effect service of process of that pleading on defendant in accordance with Rule 4, Fed. R. Civ. P.

Defendant, State of Oklahoma, *ex rel*. Regional University System of Oklahoma/University of Central Oklahoma's Motion to Dismiss Boyd's Claims (doc. no. 16) is **DENIED**.  The service of process upon defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma is **QUASHED**, and plaintiff Calyn Boyd has 30 days from the date of this order to re-serve defendant with summons and the First Amended Complaint and to show proper proof of service of process upon defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma.  If plaintiff Calyn Boyd fails to show proper proof of service of process upon defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma, within the time prescribed, the court will dismiss plaintiff Calyn Boyd's claim under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681(a), against defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma, without prejudice under Rule 41(b), Fed.

41

R. Civ. P., for failure to comply with the court's order.  However, plaintiff Calyn Boyd and plaintiff Sierra Rudman have been granted leave to file a Second Amended Complaint against defendant Kay Robinson and plaintiff Sierra Rudman has been granted leave to file a Second Amended Complaint against defendant State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma.  If plaintiffs choose to file a Second Amended Complaint, plaintiff Calyn Boyd shall include her Title IX claim against defendant, State of Oklahoma, *ex rel*. Board of Regents for the Regional University System of Oklahoma, in that pleading and plaintiffs will be required to effect service of process for that pleading on defendants in accordance with Rule 4, Fed. R. Civ. P.

Defendants' Motion for Severance (doc. no. 17) is **DENIED** without prejudice to re-urging.

IT IS SO ORDERED this 18th day of November, 2022.


_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


22-0091p003.docx